**KEANE DEALER SERVICES, INC., Plaintiff,**

v.

**William R. HARTS and Smith Barney, Inc., Defendants.**

**William R. HARTS and Smith Barney, Inc., Third–Party Plaintiffs,**

v.

**Kevin R. KEANE, Third–Party Defendant.**

No. 95 Civ. 9664(HB).

United States District Court, S.D. New York.

July 1, 1997.

Marc A. Pergament Weinberg, Kaley, Gross & Pergament, L.L.P., Garden City, NY, for Keane Dealer Services Inc.

Mark A. Belnick, Paul Weiss Rifkind Wharton & Garrison, New York City, for William R. Harts.

Peter J. Shatzkin, Shatzkin & Furman, L.L.P., Forest Hills, NY, Judith R. Cohen, Squadron, Ellenoff, Plesent, & Sheinfeld, LLP, New York City, for Kevin Keane.

## OPINION AND ORDER

BAER, District Judge.

Defendants and third-party plaintiffs Smith Barney, Inc. and William Harts ("defendants") move for summary judgment (1) dismissing plaintiff's complaint and (2) granting them the relief they seek in their counterclaim and third party complaint—a declaration that they have not infringed plaintiff and/or third party defendant's copyright. For the reasons discussed below, the motion is GRANTED.

## BACKGROUND

Plaintiff Keane Dealer Services, Inc. ("KDSI") brought this action alleging copyright infringement by defendants. Defendants counterclaimed against plaintiff and filed a third-party complaint against plain-

tiff's principal, Kevin Keane.[1] Keane and defendant Harts worked together at Shearson Lehman Brothers ("Lehman"), not a party to this action, and together developed a software program known as SLBX. The program, an automated trading system, traded a proprietary account of Lehman's against incoming retail order flow. The details are unimportant except that the program was only valuable so long as a retail order flow existed.

In March 1993 defendant Smith Barney entered into an Asset Purchase Agreement with Lehman, which included purchasing all of Lehman's retail branches and retail order flow. The Agreement also included the OMS system, which processed Lehman's retail order flow and contained the SLBX interface that fed the relevant data regarding retail orders to SLBX. The transaction closed in July 1993 and the retail order flow was transferred to Smith Barney as of September 3, 1993.

Following the sale, Keane and Harts talked to Smith Barney about working there, as their sole role at Lehman had been development and operation of SLBX and after the closing their role disappeared. Harts accepted an offer of employment from Smith Barney. Keane declined. Instead, he sought but failed to become a consultant at Smith Barney. He left Lehman and formed KDSI. When he left, it was made clear that he had no proprietary rights in SLBX, but that he was entitled to market the underlying concepts which he had brought with him to Lehman.

It is undisputed that, following the sale, people from Smith Barney called Lehman's counsel to ask how SLBX complied with securities regulations and that Lehman readily answered any questions concerning SLBX. Accordingly, Lehman's counsel, Richard Chase, testified at his deposition that "shortly after" Smith Barney began using SLBX, i.e., in September 1993, he became aware of Smith Barney's use of the program when one of Smith Barney's attorney's called him with questions about the system. Chase Depo. at 66; Chase Aff. ¶ 6. Chase also testified, and

his testimony is undisputed, that Lehman chose to take no action against Smith Barney with respect to its use of SLBX. "The conclusion that was reached was that we would not object to Smith Barney's use of the system." Chase Depo. at 76. He went on to testify that after the closing

> there were . . . a number of issues pending between the two firms with respect to the Shearson asset sale. . . . [M]y sense that there was, again, either a tacit or explicit quid pro quo that our not objecting to the use of the SLBX system would be helpful in other aspects of the relationship between the two firms.

Chase Depo. at 85. *See also* Deposition of Donald L. Crooks at 32 ("There were a lot of things going on between Smith Barney and Lehman. . . . [W]e just . . . disregarded [their use of SLBX] because of these other things."). While Chase used the term "quid pro quo", he failed to identify any specific consideration that Lehman received.

In late 1994, Keane approached Lehman with an offer to buy all rights to SLBX, allegedly because he had an unnamed Canadian firm interested in the program. The parties executed an agreement, dated July 12, 1995, granting Keane all rights in the program in exchange for royalties of 10% of any gross revenue from Keane's use of the program. Notably, there are two changes between the original draft agreement (written by Keane) and the final agreement. First, Keane's version granted him rights "retroactively" to September 4, 1993 (the day after Smith Barney received the retail flow), while the final agreement merely makes the transfer effective September 4, 1994, without use of the word "retroactively". More importantly, Keane's draft contains a representation that Lehman has not granted any third parties any rights to SLBX, while the final agreement contains no such representation. There was apparently no negotiation between the parties with regard to these changes.

After signing the agreement, Keane requested the source code for the program

---

**1.** For convenience's sake, KDSI and Keane will be referred to collectively as plaintiffs in this opinion, although Keane is technically a third-party defendant.

from Lehman, who could not locate it. He was told to ask Smith Barney for it, but did not. KDSI then registered a copyright in the program, and instituted this action against Smith Barney and Harts for copyright infringement. Defendants counterclaimed against KDSI and impleaded Keane as a third-party defendant seeking a declaration of no infringement. Oral argument was held Wednesday, June 18, 1997 and I reserved decision.

## DISCUSSION

### I. Implied License

 Defendants assert that they are entitled to summary judgment because they were given an implied, non-exclusive license to use the software by Lehman, and that Lehman's grant of its rights to KDSI could not negate this license. A license is a defense to a claim of copyright infringement. *Oddo v. Ries,* 743 F.2d 630, 634 n. 6 (9th Cir.1984). While exclusive licenses must be in writing,

> a nonexclusive license may be granted orally, or may even be implied from conduct.... In fact consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing.

*I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir.1996). Defendants argue that Lehman's knowledge of, and acquiescence in, their use of the software constituted an implied license to use it. Plaintiffs have not presented any evidence to counter the testimony by Chase that Lehman knew that Smith Barney was using the software. This knowledge, they contend, coupled with Lehman's silence in the face of Smith Barney's use of the program, constitutes an implied license to use SLBX. I agree. Summary judgment is thus appropriate with regard to use of the program up until the time of the institution of this action.

 An implied license is revocable, however, where no consideration has been given for the license. *Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 574 n. 12 (4th Cir.1994); *Johnson v. Jones,* 885 F.Supp. 1008, 1013 n. 6 (E.D.Mi.1995). While defendants argue persuasively that Lehman did not object to Smith Barney's use because it concluded to concentrate on other open items between the two, there is no evidence that Lehman even mentioned having given tacit permission to use the software during its negotiations with Smith Barney. At the very least, this raises a question of fact as to whether consideration was given by Smith Barney. If no consideration was given, the license was revocable, and the institution of this lawsuit would constitute revocation. *Peer Int'l Corp. v. Luna Records,* 887 F.Supp. 560, 566 (S.D.N.Y.1995) (commencement of infringement action "should have resolved any doubts" regarding plaintiff's intent to terminate license). Summary judgment on the basis of an implied license is therefore inappropriate with respect to use of the software after the institution of this lawsuit.

### II. Estoppel

 Defendants contend that as to the use after suit plaintiffs are equitably estopped from bringing any infringement action. In the context of a copyright action the holder's rights may be destroyed if the defendant shows that:

> the party to be estopped had knowledge of defendant's infringing conduct, and either intended that his own conduct be relied upon or acted so that the party asserting the estoppel has a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment.

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 456 F.Supp. 531, 535 (S.D.N.Y. 1977), *aff'd,* 592 F.2d 651 (2d Cir.1978). Here, there is undisputed evidence that Lehman (in whose shoes plaintiffs stand) knew of defendant's use of the software. Lehman's silence in the face of this knowledge coupled with its willingness to assist Smith Barney when the latter had questions regarding the software constitutes conduct on which Smith Barney was entitled to rely. As to detrimental reliance on the part of defendants, they introduced undisputed evidence that had they known they were violating a copyright they could have easily negotiated a license agreement with Lehman or created a pro-

gram of their own. While plaintiffs argue that such an assertion is speculation, they provide no evidence to the contrary. In light of Lehman's virtual gifting of the rights to the program to Keane and Lehman's acquiescence in Smith Barney's use of the program and desire to resolve any open items between the two entities, the sworn affidavit that asserts a license could easily have been negotiated is not speculative and constitutes a sufficient factual basis for granting summary judgment.

██ Finally, plaintiffs cite *Peer International, supra,* for the proposition that any claim of detrimental reliance ended when this lawsuit was filed. 887 F.Supp. at 567. *Peer International* is factually distinguishable because the defendants in that case were on notice that their license to use the copyrighted material may be terminated. No such circumstance exists here. Furthermore, a general rule, such as that proposed by plaintiffs, that detrimental reliance ends when a lawsuit is filed would obviate estoppel as an equitable defense.

Estoppel is a drastic remedy and must be utilized sparingly. Clearly, a successful application of this remedy requires the party asserting estoppel to use due care and not fail to inquire as to its rights where that would be the prudent course of conduct. Here, however, there was nothing to indicate to defendants that they were unauthorized to use the software. To the contrary, the evidence clearly supports defendants' reasonable assumption that they were entitled to use SLBX and that they relied on that assumption to their detriment.

## CONCLUSION

For the reasons discussed above, defendants' motion is GRANTED, the complaint is DISMISSED and defendants' use of the SLBX program is declared to be non-infringing.

**SO ORDERED.**