Robert PAVLICA, Ph.D., Plaintiff,

v.

Leonard BEHR and Daniel Wulff, Defendants.

Robert Pavlica, Ph.D., Plaintiff,

v.

New York Academy of Sciences and The Research Foundation of State University of New York, Defendants.

Nos. 03 Civ. 9628(DC), 04 Civ. 8152(DC).

United States District Court, S.D. New York.

Nov. 3, 2005.

Levisohn, Berger & Langsam, LLP, New York City by Andrew S. Langsam, for Plaintiff Robert Pavlica, Ph.D.

Heslin Rothenberg Farley & Mesiti P.C., Albany, NY by Robert E. Heslin, Brett Hutton, for Defendants Daniel Wulff, Leonard Behr, and the Research Foundation of State University of New York.

Brown Raysman Millstein Felder & Steiner LLP, New York City by John C. Ohman, Derek J. Craig, for Defendant New York Academy of Sciences.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Robert Pavlica, Ph.D., brings these actions for copyright infringement, trademark infringement, and related state law claims against defendants Leonard Behr, Daniel Wulff, The Research Foundation of State University of New York ("RF–SUNY"), and New York Academy of Sciences ("NYAS"). Defendants move for summary judgment dismissing all plaintiff's claims. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## BACKGROUND

### A. Facts

The following facts are drawn from the pleadings and the parties' motion papers and supporting materials. All conflicts in the evidence have been resolved in favor of Pavlica, the party opposing summary judgment.

### 1. The Authentic Science Research Program

Pavlica has been employed as a science teacher at Byram Hills High School ("Byram Hills") in Armonk, New York, since 1970. (Pavlica Dep. 9). In the spring of 1989, Pavlica began to develop a new program designed to teach high-school students to conduct scientific research based on a Ph.D. model, which would eventually become "The Authentic Science Research Program." (Pavlica Decl. ¶¶ 17–28). After Pavlica developed the research course and its initial materials, he then convinced Byram Hills to adopt the course, which was implemented by Pavlica in September 1989. (Id. ¶ 24). By 1992, Pavlica had created a teacher's manual consisting of approximately thirty-three to thirty-five pages. (Id. ¶ 25). He used this manual in one-hour workshops, which he organized, at which he trained teachers in his method of teaching independent science research to high-school students. (Id. ¶¶ 25, 30–31). Additionally, Pavlica gave some pages from this manual to students in the independent science research course at Byram Hills. (Id. ¶ 25).

Pavlica developed the course and its corresponding materials at his home, on his own time, without compensation from Byram Hills, without any communication with or involvement by Byram Hills, and independently of any direction of Byram Hills. (Id. ¶¶ 17–28, 111–15). Though Pavlica was employed at Byram Hills at the time of the program's development, he designed the Authentic Science Research Program and its materials for use in any high school in the nation. (Id. ¶¶ 2, 15–28). Byram Hills agrees that Pavlica created the course and manual without administrative support from the school and believes that

Pavlica owns the copyright to the materials. (Taylor Dep. at 19, 23).

### 2. *The NSF Grant*

In 1993, Wulff, a professor of Biological Sciences at the State University of New York at Albany, asked Pavlica to become involved with him and Behr, a retired high-school teacher, in a grant application to the National Science Foundation ("NSF"). (Behr Decl. ¶ 1; Wulff Decl. ¶ 1; Defs.' 56.1 ¶ 24). The first grant application included several pages from Pavlica's Teacher's Manual and report forms, which were attached as appendices to the application. (Wulff Ex. A at BW 6892–6894, 6912–6918, 6980–7005).

On April 20, 1996, the NSF awarded a grant for the period April 15, 1996 to March 31, 2000, to be administered by RF–SUNY, a private, nonprofit educational corporation responsible for the administration of externally funded contracts and grants for the State University of New York. (Wulff Decl. ¶ 11; Wulff Ex. B). The purpose of the grant was to fund a series of workshops to train 120 high-school teachers to offer science research courses in schools throughout the Hudson Valley of New York State. (Wulff Ex. A at BW 6895). These courses were to be patterned after the Authentic Science Research Program, developed by Pavlica and taught at Byram Hills. (*Id.*).

During the first NSF grant, Pavlica conducted at least eight NSF-funded workshops, at which he distributed the latest versions of his Teacher's Manual to the attending teachers.[1] (Pavlica Decl. ¶¶ 196, 206). During these workshops, Pavlica orally granted the attending teachers permission to copy the Report Forms from the manual. (*Id.* ¶ 208). In addition, several pages of the manual instruct teachers

to make photocopies of sections of the manual. (*E.g.,* Wulff Ex. C at BW7340–41, BW7444).

Wulff, Behr, and Pavlica submitted a second NSF grant application around August 24, 1998, to continue the work they started under the first NSF grant. (Wulff Ex. C; Hutton Ex. A). With Pavlica's knowledge and consent, the 1998 version of his Teacher's Manual was attached to the grant application. (Wulff Ex. C at BW 7205–7208, 7304–7389). The first page of this manual stated: "[a]ny reproduction is prohibited unless permission is granted by the author" and identified Pavlica as the copyright owner. (*Id.* at BW 7304).

On April 1, 1999, the NSF awarded a second NSF grant to RF–SUNY, for the period June 1, 1999 to May 31, 2002. (Wulff Ex. D). Under the second grant, RF–SUNY entered into a contract with NYAS, an independent, nonprofit organization aimed at stimulating high-school students to think in new ways about their scientific research, in an effort to increase workshop participation by New York City teachers. (Wulff Ex. C at BW 7203; Wulff Decl. ¶ 12). Pavlica continued to distribute his Teacher's Manual under this grant until September 2000, when Wulff terminated Pavlica's involvement in the program. (Pavlica Decl. ¶¶ 170, 189, 193, 196, 206, 207).

### 3. *Pavlica Enforces His Copyright*

In 2000, Pavlica told Wulff and Behr that he had decided to enforce his copyrights. (Pavlica Dep. 176, Pavlica Decl. ¶ 210). In a letter dated June 6, 2000, Pavlica's attorney advised Wulff that Pavlica, as the author of the manual, had the exclusive right to reproduce the work and that it would be an infringement to distrib-

---

**1.** As set forth below, Pavlica continued to distribute his manual at NSF workshops until

his termination from the second NSF grant in 2000.

ute copies without his permission.[2] (Wulff Ex. F). The letter did not allege any acts of infringement by Wulff. (*Id.*). This letter was followed by another letter dated September 12, 2000, in which Pavlica's counsel wrote: "Please terminate all activity on this program until the matter of copyright infringement is resolved. No printed program material is now available, except from Authentic Science in High Schools, Co." (Wulff Ex. G). It further directed the return of any existing copies of the manual to Pavlica. (*Id.*). The letter did not allege copyright infringement, but rather focused on preventing future infringing acts. (*Id.*). Defendants concede that they did not comply with these requests. (Behr Dep. 154–55, 187–88, 247).

**B. Prior Proceedings**

On January 29, 2001, Pavlica acquired three copyright registrations for different versions of the manual. (Compls.Ex.A). On December 4, 2003, Pavlica brought the first of these actions against Behr and Wulff. On October 18, 2004, Pavlica brought the second of these actions against NYAS and RF–SUNY. After discovery, defendants filed these motions for summary judgment on all claims.

## DISCUSSION

I discuss first the two copyright claims of direct and contributory infringement, second the trademark claim, third the breach of contract claim, and fourth the tortious interference claim.

**A. Direct Copyright Infringement**

■ To prevail on a claim of copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent ele-

ments of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Because defendants admit that they copied and distributed the Teacher's Manual for the 2001, 2002, and 2003 summer workshops, plaintiff satisfies the second element laid out in *Feist*. (*See* Behr Dep. 154–55, 187–88, 247). Defendants challenge plaintiff's ownership of the copyright in the Teacher's Manual and assert several defenses to the admitted acts of copying.

### 1. Ownership

### a. Applicable Law

Under the Copyright Act of 1976, copyright ownership generally vests in the author of a work. 17 U.S.C. § 201(a). In this case, it is uncontested that Pavlica is the author of the Teacher's Manual. (Defs.' 56.1, ¶¶ 13–14). Defendants claim, however, that the work for hire exception applies to this case.

■ The Copyright Act defines a work for hire as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. In the absence of an express, written agreement, the rights to a work for hire generally vest in the employer rather than the employee-author. 17 U.S.C. § 201(b). Defendants claim that the work for hire exception should apply in this case because Pavlica created the manual and course while he was employed at Byram Hills. Because Pavlica concedes that he was an employee at Byram Hills when he created the manual (Pl.'s 56.1 ¶ 10), "the key issue" is whether the creation of the manual was "within the scope of [plaintiff's] employ-

---

**2.** As stated, Pavlica continued to permit RF– SUNY to distribute copies of his manual at the 2000 summer workshops.

ment." *Shaul v. Cherry Valley–Springfield Central School District*, 363 F.3d 177, 186 (2d Cir.2004).

■ "[N]o one sells or mortgages all the products of his brain to his employer by the mere fact of employment." *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.03[B][1][b] (2005) (quoting *Pub. Affairs Assocs., Inc., v. Rickover*, 177 F.Supp. 601, 604 (D.D.C. 1959), *rev'd on other grounds*, 284 F.2d 262 (D.C.Cir.1960)). Instead, to fall within the work product exception, the work created by an employee must fall within the scope of his employment. *See* 17 U.S.C. § 201(b); *Shaul*, 363 F.3d at 186. In determining whether a work was created within the scope of employment, the Court may consider, applying common law principles of agency, whether: "(a) [the work] is of the kind [the employee] is employed to perform; (b) it occurs substantially within authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Restatement (Second) of Agency* 228 (1958); *see also Cmty. for Non–Creative Violence v. Reid*, 490 U.S. 730, 739–40, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (citing Section 228 of Restatement (Second) of Agency in support of its conclusion that Congress intended to incorporate agency law definitions in 17 U.S.C. 101(1)); *Shaul*, 363 F.3d at 186 (applying three-prong test to determine whether the work for hire exception applied to teacher's materials).

#### b. *Application*

■ The Second Circuit has observed that "the very nature of a teacher's duties involves a substantial amount of time outside of class devoted to preparing [works] within the scope of his employment." *Shaul*, 363 F.3d at 186. Therefore, defendants may be correct that Pavlica's creation of the manual falls within the space and time requirements of the second prong. Nevertheless, there remain questions of fact as to whether the creation of the manual was the kind of work Pavlica was employed to perform (the first prong) and whether the work was created with a purpose to serve Byram Hills (the third prong). Pavlica maintains that he created the manual and course without any prompting or direction by Byram Hills, using his own resources. He claims that he designed the course and manual to be implemented at any high school in the country. (Pavlica Decl. ¶¶ 2, 15–28). If the jury accepts his assertions, it could reasonably conclude that this work fell outside the scope of his employment.

Defendants erroneously rely on *Shaul v. Cherry Valley–Springfield Central School District* to argue that the creation of the manual falls within the scope of Pavlica's employment. 363 F.3d 177. In *Shaul*, the Second Circuit held that the work for hire doctrine precluded the plaintiff-teacher's claims that he owned the tests, quizzes, and homework problems he prepared. *Id.* at 186. In *Shaul*, however, the plaintiff claimed copyright ownership in materials he created for an already established class he was employed to teach, placing the preparation within his existing duties as a teacher. *Id.* Here, as a reasonable jury could find, Pavlica designed an entirely new course without the assistance of or direction by his employer. Because Byram Hills played no role in the creation of this course, Pavlica had no way of knowing whether the course would ever be implemented at Byram Hills. (Pavlica's Decl. ¶ 24). Indeed, even Byram Hills maintains that Pavlica owns the copyright to the manual and pays him the standard fee for use of the manual in its science research program.

The facts of this case more closely parallel those of *Hays v. Sony Corp. of Amer-*

*ica*, 847 F.2d 412 (7th Cir.1988). In *Hays*, the plaintiffs, both high-school teachers, created a manual for their students on how to operate the school's word processors. *Id.* at 413. The Seventh Circuit concluded that the creation of the manual was likely outside the scope of employment because, like Pavlica, the plaintiffs "prepared the manual on their own initiative without direction or supervision by their superiors." [3] *Id.* at 417. The court further observed that "high-school teachers normally are not expected to do writing as part of their employment duties." *Id.* at 417; *see also* 1 Nimmer & Nimmer, *supra*, § 5.03[B][1][b] n. 95 ("[U]nder the 1976 Act, preparation of written materials for publication may often be beyond the 'scope of employment' for secondary school teachers.").

Accordingly, genuine issues of material fact exist for trial as to whether the manual was a work for hire.

### 2. *Implied License*

Defendants argue that, even if plaintiff owns a copyright in the work, his claim of copyright infringement is barred because plaintiff granted them an implied license to use his work.[4]

### a. *Applicable Law*

A copyright owner may grant a license in his work, thereby waiving his right to sue the licensee for copyright infringement. *See Graham v. James*, 144 F.3d 229, 236 (2d Cir.1998); *Ulloa v. Universal Music & Video Distrib. Corp.*, 303 F.Supp.2d 409, 416 (S.D.N.Y.2004). As the alleged licensees, defendants bear the burden of proving the existence of a li-

cense. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995).

Although exclusive licenses must be conveyed in writing, "nonexclusive license[s] may be granted orally, or may even be implied from [the parties'] conduct." *Keane Dealer Servs., Inc. v. Harts*, 968 F.Supp. 944, 947 (S.D.N.Y.1997) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir.1996)) (alterations added). To establish that there was an implied license, defendants must show that there was a meeting of the minds as determined by contract law. *See Ulloa*, 303 F.Supp.2d at 416. The Second Circuit has clarified, however, that "courts have found implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.' " *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir.2000) (quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990)); *see also Ulloa*, 303 F.Supp.2d at 416.

### b. *Application*

In this case, genuine issues of material fact exist as to whether there was a meeting of the minds giving rise to an implied license or what the scope of that license might be. Pavlica claims that he intended that any use of the manual was tied to his continued employment under the NSF grant. Additionally, the warning on the first page of the manual submitted with the grant application and distributed at workshops clearly stated that "[a]ny

---

3. The court upheld the district court's dismissal of the plaintiffs' claim for copyright infringement because their request for relief was frivolous. *Hays*, 847 F.2d at 415.

4. Defendants acknowledge that "the first grant application does not explicitly state that

the appended materials are licensed for use in the program," claiming instead that "there is a clear implication that such materials will actually be used [in the NSF grant]." (RF–SUNY's Reply 2).

reproduction is prohibited unless permission is granted by the author." Further, Wulff concedes that the use of the manual was never discussed prior to applying for the grant. From these facts, a jury could reasonably conclude that no implied license existed or, alternatively, that the implied license was dependent on Pavlica's continued employment under the grant.

■■■ Even assuming there was an implied license, a genuine issue of fact exists as to whether plaintiff revoked this license when he withdrew his consent to use his materials. An implied license is freely revocable absent consideration. *See Keane Dealer*, 968 F.Supp. at 947. Defendants claim that plaintiff received consideration in the form of a salary and other benefits. Plaintiff maintains, however, that this consideration was in exchange for teaching workshops under the grant. Indeed, Wulff acknowledges that it was never discussed whether Pavlica would receive compensation for the use of his manual. Thus, a question of fact exists as to whether plaintiff received consideration for the use of his materials. Accordingly, the defendants are not entitled to summary judgment on a theory of implied license.

### 3. *Estoppel*

■■■ Defendants further claim that plaintiff is estopped from asserting a copyright infringement action because he consented to the use of the manual in the grant application and workshops. To establish a claim of estoppel, defendants must show that "[plaintiff] had knowledge of defendant's infringing conduct, and either intended that his own conduct be relied upon or acted so ... [the defendants] ha[d] a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment." *Id.* (quoting *Lottie Joplin Thomas Trust v.*

*Crown Publishers, Inc.*, 456 F.Supp. 531, 535 (S.D.N.Y.1977), aff'd, 592 F.2d 651 (2d Cir.1978)). "Estoppel is a drastic remedy and must be utilized sparingly." *Id.* at 948.

■■■ Defendants' estoppel claim fails, at least at the summary judgment stage. The copy of the manual attached to the grant application and those handed out at workshops contained a notice on the first page stating "[a]ny reproduction is prohibited unless permission is granted by the author" and identified Pavlica as the copyright owner. (Wulff Ex. C. at BW 7304). This notice creates a triable issue of fact whether defendants were "ignorant of the true facts." Additionally, plaintiff only alleges copying committed *after* he requested that defendants stop using the manual constitutes copyright infringement. Rather than conceding to his demands, defendants waited two years to create their own manual, thereby casting doubt on their claim that they detrimentally relied on Pavlica's conduct. From these facts, a reasonable jury could find that plaintiff is not estopped from asserting his rights.

### 4. *Damages*

Defendants challenge plaintiff's ability to prove damages.

Defendants claim that plaintiff is not entitled to statutory damages. Section 412 of the Copyright Act bars, in part, statutory damages for "any infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 U.S.C. 412. Pavlica's copyrights were registered on January 29, 2001. Though defendants argue that the alleged acts of infringement occurred before the registration date, plaintiff maintains that the copyright infringement did not begin until the summer of 2001, at least five months after his registration. Assuming a jury concluded that infringement did not

begin until after the registration date, Pavlica would be entitled to statutory damages.

■ Defendants further argue that plaintiff cannot prove actual damages attributable to defendants.[5] Even absent proof of lost profits, a copyright owner may be permitted "to recover actual damages, in appropriate circumstances, for the fair market value of a license covering the defendant's infringing use." *On Davis v. Gap*, 246 F.3d 152, 172 (2d Cir.2001). Accordingly, if Pavlica successfully proves copyright infringement by defendants, he could be entitled to a licensing fee equal to the fair market value of the manual even without proof of lost profits. Thus, defendants' argument fails.

Defendants' motion for summary judgment dismissing the direct copyright infringement claim is denied.

### B. Contributory Copyright Infringement

Defendants move for summary judgment on plaintiff's claim for contributory infringement. Defendants raise the same challenges to this claim that they raised in challenging the direct copyright infringement claim. They further argue, however, that the claim for contributory copyright infringement should be dismissed because plaintiff has failed to offer any admissible evidence of primary copying by teachers.

■ If an individual knowingly "induces, causes or materially contributes to the infringing conduct of another, [he] may be held liable as a 'contributory' infringer."

*Faulkner v. Nat'l Geographic Enters. Inc.* 409 F.3d 26, 40 (2d Cir.2005) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971) (footnote omitted)) (alteration added). To be found liable for contributory infringement, there must be a primary infringer. *See Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir.1998) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990) ("Contributory infringement necessarily must follow a finding of direct or primary infringement."); 2 Paul Goldstein, *Copyright* § 6.0 (1996) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred.")).

■ Although plaintiff has introduced sufficient evidence to give rise to the conclusion that defendants informed teachers who had attended the NSF workshops that they could copy the materials, he has failed to introduce any admissible evidence of copying by teachers in the relevant period.[6] Instead, he has offered letters from various high-school administrators acknowledging some instances of copying by teachers at their schools. These letters, however, are hearsay. They are not even under oath and are out of court statements offered to prove the truth of the matter asserted therein. Plaintiff had the opportunity during discovery to depose these teachers or to obtain affidavits and failed to do so. Because plaintiff has submitted no admissible evidence of primary copying as required by Rule 56(e) of the Federal Rules of Civil Procedure,[7] the claim of contributory infringement is dismissed.

---

5. Defendants also argue that Pavlica seeks punitive damages for his copyright infringement claim. Defendants presumably mistake Pavlica's request for an increased sum under 17 U.S.C. 504(c)(2) for a request for punitive damages. Because Pavlica does not seek punitive damages, defendants' argument is moot.

6. Plaintiff acknowledges that he consented to the copying of his manual by teachers while he was employed with the NSF grant.

7. The only evidence of primary copying by teachers comes from Behr, who declared that he copied materials from September 2000 through December 2000 for his own students.

## C. *Lanham Act Claims*

Defendants move for summary judgment dismissing Pavlica's claims of trademark infringement and unfair competition under the Lanham Act. Defendants argue that plaintiff's trademark claim is barred by acquiescence and laches.

Where a trademark holder acquiesces in an infringer's use of a trademark or unreasonably delays in bringing a copyright action, a court may deny relief. *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic*, 314 F.3d 62, 67 (2d Cir. 2002). To establish a defense of acquiescence, defendants must show: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir.2002) (quoting *SunAmerica Corp. v. Sun Life Assurance Co.*, 77 F.3d 1325, 1334 (11th Cir.1996)). The defense of laches requires that the "defendant ... prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action." *ProFitness*, 314 F.3d at 67 (quoting *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir.1996)).

Pavlica maintains that the use of the mark was tied to his involvement with the program and that he never represented that he would not assert a claim for trademark infringement. Accordingly, a reasonable jury could conclude that plaintiff did not acquiesce in the infringing use of the mark "Authentic Science Research in the High School" or that the scope of

any acquiescence did not cover defendants' use of the term once plaintiff was dismissed from the project. Further, questions of fact exist as to whether the delay between the alleged acts of infringement and Pavlica's bringing the action was unreasonable and whether defendants were harmed by this delay.

Defendants' motion is denied to the extent it seeks dismissal of the Lanham Act claims.

## D. *Breach of Contract*

Plaintiff asserts a breach of contract claim against Wulff and Behr, alleging that they entered into a contract with him, in which plaintiff promised to teach summer workshop classes under the second grant in exchange for compensation. Defendants move to dismiss plaintiff's breach of contract claim, and plaintiff has not opposed this prong of the motion. Indeed, plaintiff has not submitted evidence of a written contract. Under Section 5–701(a) of New York General Obligations Law:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

N.Y. Gen. Oblig. Law § 5–701(a)(1) (McKinney 2001).

Because the second grant was expected to last at least two years, the terms of the

(Behr Decl. ¶ 10). Whether or not Behr's copying would allow the claim of contributory infringement to survive, Pavlica denies that any infringing copying occurred during this period, as he must to be entitled to statutory damages. (*See* Pl.'s Mem. Supp. Summ. J. 15 ("[A]ll infringements, workshops and improper copying of materials, took place after [January 29, 2001,] the date of Dr. Pavlica's copyright registrations.")).

alleged contract could not have been "performed within one year from the making thereof." *Id.* Thus, any contract is unenforceable under New York's Statute of Frauds and defendants are entitled to judgment as a matter of law dismissing the breach of contract claim.

### E. *Tortious Interference with Prospective Economic Relations*

Defendants move for summary judgment on plaintiff's tortious interference claim on the ground that it is preempted by federal copyright law. Again, plaintiff did not respond to this prong of the motion.

 The Copyright Act provides:

All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in Section 106 in works of authorship that are fixed in tangible form of expression and come within the subject matter of copyright ... are governed exclusively by this title. No person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301. Claims brought pursuant to state law are preempted by the Copyright Act where the following conditions exist: "(1) the subject matter of the state-law right falls within the subject matter of the copyright laws; and (2) the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Panizza v. Mattel, Inc.*, No. 02 Civ. 7722, 2003 WL 22251317, at *2 (S.D.N.Y. Sept.30, 2003) (quoting *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir.1993)).

 The subject matter of Pavlica's state law tortious interference falls squarely within the subject matter of the copyright laws. *See Boyle v. Stephens Inc.*, 97 Civ. 1351, 1998 WL 690816 (S.D.N.Y.

Sept.29, 1998) (applying a "broad view" of the scope of the subject matter of the copyright laws). Accordingly, Pavlica's tortious interference claim is preempted by the Copyright Act and is therefore dismissed.

### CONCLUSION

For the foregoing reasons, defendants' motions are granted in part and denied in part. A pre-trial conference will be held on November 21, 2005, at 2 p.m.

SO ORDERED.